UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONYE JONES,

       Petitioner,

v.                                              Civil Action Number: 2:09-cv-14509

                                                HONORABLE STEPHEN J. MURPHY, III

NICK LUDWICK,

       Defendant.

_____/

**OPINION AND ORDER
DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, GRANTING
PERMISSION FOR AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL
*IN FORMA PAUPERIS*, AND DENYING AMENDED HABEAS PETITION AS MOOT**

**INTRODUCTION**

Michigan prisoner Lonye Jones, currently incarcerated by the Michigan Department of Corrections at the St. Louis Correctional Facility in St. Louis, Michigan, filed this *pro se* habeas petition challenging the constitutionality of his guilty-plea convictions for assault with intent to murder and felony firearm, which occurred in the Circuit Court in Kalamazoo County, Michigan on December 13, 2006.  Jones raises the following four claims: (1) whether appellate counsel was ineffective; (2) whether his due-process rights were violated when the trial court departed from the sentencing agreement and sentenced him outside the guidelines range; (3) whether his due-process rights were violated when the trial court erred in failing to appoint substitute counsel; and (4) whether the trial court erred by basing its substantial and compelling reasons for departure in sentencing on an offense characteristic already taken into account.  In an amended petition filed May 4, 2012, Jones

raises a fifth claim that the trial court's upward departure at sentencing also violated his right to equal protection.[1]

The Court will deny the petition and will not issue Jones a certificate of appealability.

## BACKGROUND

Jones's case arises from a shooting incident that occurred on September 12, 2006, in Kalamazoo County, Michigan.  On September 26, 2006, Jones was  charged with six felonies: (1) armed robbery, (2) assault with intent to commit murder, (3) felon in possession of a firearm, and (4) three counts of felony firearm.  A supplemental information was also filed charging him as a third-offense, habitual offender.

Jones's jury trial began on December 12, 2006, but after a day and a half of trial, he accepted the prosecutor's plea agreement and pleaded guilty to assault with intent to murder, one count of felony firearm, and to the habitual-offender charge.  He was sentenced to twenty-five to forty-five years in prison for the assault conviction, to be served consecutively to Michigan's mandatory two-year prison term for the felony-firearm conviction.  The following colloquy took place at the plea hearing.

THE COURT:  Beyond what's just been placed on the record, has anyone promised you anything else that's causing you to plead guilty?

[JONES]:  No, sir.

THE COURT:  Has anyone threatened you in any way to make you plead guilty?

---

[1] The Court will treat Jones's amended petition as a request for leave to amend, and will grant the request and address Jones's equal protection claim. *See* Fed. R. Civ. P. 15(2) (providing that district courts should "freely give leave [to amend the complaint] when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'").

2

[JONES]:  No, sir.

THE COURT:  Whose choice is it that you're pleading guilty?

[JONES]:  Mine.

THE COURT:  The name of the offense you're pleading guilty to in count three is known as assault with intent to commit murder.  Do you understand that charge?

[JONES]:  Yes, I do.

THE COURT:  This is an offense that carries a maximum penalty of life or any number of years.  Are you aware of that?

[JONES]:  Yes, sir.

THE COURT:  Count four charges felony firearm, which claims that you had in your possession a firearm at the time you committed or attempted to commit assault with intent to commit murder.  Do you understand that charge?

[JONES]:  Yes, sir.

THE COURT:  This is an offense that carries a penalty of two years and that two years must be served consecutively with and preceding any term of imprisonment imposed for the felony in count three.  Do you understand that?

[JONES]:  Yes, sir.

THE COURT:  All right.  The claim is that on or about September 12, 2006, in Kalamazoo County, Michigan, these offenses occurred.  Were you in Kalamazoo County, Michigan, on that date?

[JONES]:  Yes, sir.

THE COURT:  And on that date what did you do that makes you think you're guilty of count three, assault with intent to murder.  The claim is you made an assault upon Mar[c] Lev[i] with intent to commit murder.

[JONES]:  True.

THE COURT:  Well, you have to tell me what you did, not just say it's true.

[JONES]:  I shot him–

3

THE COURT: And–

[JONES]: –with the intent to kill him.

THE COURT: Okay. Shot him with what?

[JONES]: A gun.

THE COURT: Handgun?

[JONES]: Yes, sir.

THE COURT: Okay. And you intended to kill him?

[JONES]: Yes, sir.

THE COURT: Okay. Now count four claims that at the time you committed the offense you just pled to that you possessed a handgun. This may seem somewhat redundant, but at the time you committed the felony in count three, did you, in fact, possess a handgun?

[JONES]: Yes, sir.

Plea Hr'g Tr. 4-6 Dec. 13, 2006.

At sentencing, the prosecution requested that offense variable six, which speaks to the fact that the offender premeditated intent to kill, be increased to fifty points. The trial judge agreed. Sentencing Hr'g Tr. 17-18 Jan. 8, 2007. That change increased the minimum sentence range from 135 months to 225 months. *Id.* at 19.

The prosecutor also reminded the trial judge of letters that Jones sent to his sister, asking her to get a witness to testify for him. In the letters, Jones specified the type of witness he wanted: a witness with no criminal record, who had a real job, and was female, white, and older. Sentencing Hr'g Tr. 21 Jan. 8, 2007. He wanted the witness to be able to answer questions about how the shooting occurred. Jones also asked the witness to drive by the scene so she would know how it looked. On that basis, the prosecutor asked

4

the court to deviate from the sentencing guidelines and sentence Jones to twenty-five to fifty years in prison.  *Id.*

After reviewing the letters, the judge agreed, and stated that there were substantial and compelling reasons to deviate from the guidelines.  Sentencing Hr'g Tr. 34-35 Jan. 8, 2007.  The trial judge then sentenced Jones as described.

Following his sentencing, Jones filed a motion to withdraw his plea, claiming that his plea was not voluntarily or knowingly made.  The trial court denied the motion because the transcript showed Jones understood the plea agreement and his sentencing options.  *People v. Jones*, No. C06-1947 FC (Kalamazoo Cnty. Cir. Ct. July 19, 2007).

Subsequently, Jones filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising claims concerning trial-court error in sentencing him and in denying his motion to withdraw his plea.  The Court of Appeals denied Jones's delayed application.  *People v. Jones*, No. 279886 (Mich. Ct. App. Sept. 18, 2007).  His application for leave to appeal that decision was denied on January 8, 2008.  *People v. Jones*, 480 Mich. 1011, 743 N.W.2d 40 (2008) (Table).

On May 16, 2008, Jones filed a motion for relief from judgement with the state trial court, raising several of the same claims raised in his habeas petition, plus a claim concerning a wrongful assessment of attorney's fees.  The trial court denied the motion.  *People v. Jones*, No. C06-1947 FC (Kalamazoo Cnty. Cir. Ct. May 27, 2008).  Both state appellate courts denied his applications for leave to appeal the trial court's decision for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Jones*, No. 286604 (Mich. Ct. App. Oct. 3, 2008); *People v. Jones*, 483 Mich. 894, 760 N.W.2d 483 (2009) (table).  Jones signed his habeas petition on November 4,

5

2009. It was filed with this Court on November 18, 2009.

Respondent filed an answer, arguing that Jones's petition should be denied because Jones's second and third claims were procedurally defaulted under state law and Jones failed to show cause and prejudice for the default, and because Jones's fourth habeas claim is based only on an alleged violation of Michigan law and is therefore not cognizable on federal habeas review. Respondent did not file an answer to Jones's amended petition. The Court will first address the procedural default issue.

I.    Procedural Default

The procedural default doctrine bars federal habeas review  when a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Review is barred because the state-court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51 (citations omitted). If a claim has been procedurally defaulted, habeas review is available only if the petitioner can establish "cause for [his] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

A habeas petitioner procedurally defaults a claim if:

(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the state procedural rule; (3) the state procedural rule is an "independent and adequate" state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot demonstrate cause and prejudice excusing the default.

*See Tolliver v. Sheets*, 594 F.3d 900, 927 n.11 (6th Cir. 2010) (citation omitted).

Respondent contends that Jones's first three claims are procedurally defaulted because the Michigan Court of Appeals and the Michigan Supreme Court both declined to review the merits of Jones's post-conviction motion for relief from judgment, stating that he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Jones*, No. 286604; *Jones*, 483 Mich. 894, 760 N.W.2d 483. The Sixth Circuit has held that such form orders invoking Michigan Court Rule 6.508(D) do not make sufficiently clear whether the petitioner has failed to establish entitlement to relief on the merits or on procedural grounds. *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010). When the basis of the court's holding is ambiguous, such orders cannot be relied upon to invoke a procedural bar. *Id.*

Here, the trial court did not rely on the procedural bar to deny Jones's claims. Therefore it seems unlikely that when the appellate courts invoked M.C.R. § 6.508(D) to deny Jones leave to appeal, they did so on procedural grounds that were not discussed by the trial court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that the court must presume that unexplained orders of the appellate courts rejected petitioner's post-conviction claims on the same ground that the state trial court did). At the very least, the orders are ambiguous. Accordingly, the appellate decisions do not establish procedural default, and the Court must look to the trial court's decision. Because the trial court adjudicated Jones's claims on the merits, with no mention of the procedural bar, then the bar does not provide adequate and independent grounds for the trial court's decision and Jones's claims must be reviewed on their merits.

II.    <u>Standard of Review</u>

Section 2254(d) of Title 28, United States Code, imposes the following standard of

7

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

This court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.*  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.


III.    <u>Discussion</u>

   A.    <u>Sentencing Departure Claims</u>

8

Jones claims that he was denied due process and equal protection when the trial court (1) based its substantial and compelling reasons for departing from the sentencing guidelines on factors that had already been taken into account, and (2) exceeded the recommended sentence under the Michigan Sentencing Guidelines. Jones also claims that he was denied due process when the trial court refused to let him withdraw his plea, and that his plea agreement was contingent upon being sentenced within the guidelines.

       1.   <u>Due Process</u>

First, Jones's claim that the trial court did not permit him to withdraw his plea does not entitle him to habeas relief. A petitioner has "no federal constitutional right, or absolute right under state law, to withdraw a plea. The decision to permit a defendant to withdraw his plea invokes the trial court's discretion.  A trial court's abuse of discretion generally is not a basis for habeas corpus relief." *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted).  Unless the plea itself violated a clearly established constitutional right, whether to allow the withdrawal of a criminal defendant's plea is within the discretion of the state trial court.  *See Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

Moreover, as the trial court found, Jones's plea agreement was not contingent on being sentenced within the guidelines. In addressing this claim in Jones's motion for relief from judgment, the trial judge stated:

> The Defendant pled December 13, 2006.  The plea agreement in this case was that the Defendant would plea guilty to one count of Assault with Intent to Murder and one count of Felony Firearm.  At the time of sentencing, the People would dismiss one count of Armed Robbery, two counts of Felony Firearm, and one count of Felon in Possession of a Firearm.  The People would keep their sentence recommendation.  The Defendant confirmed that that was also his understanding of the agreement and that there were no

9

other promises made to him to make him plead guilty.  As this Court already explained in its ruling on Defendant's Motion to Withdraw Plea on July 19, 2007, the Defendant admitted that he understood that the penalty carried a maximum penalty of life or any number of years and the Prosecution reserved its right to make a sentence recommendation.  The offer was not for a certain term of years.  Therefore, the agreement was followed and there was no reason to allow the Defendant to withdraw his plea.

*Jones*, No. C06-1947 FC, at 4-5.

Second, any error by the trial court in calculating Jones's guidelines score or in departing above Jones's sentencing-guidelines range does not merit habeas relief.  *Id.* It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "A petitioner does not have a state-created liberty interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) *aff'd*, 173 F. App'x 437 (6th Cir. 2006).  "In short, [Jones has] no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (Gadola, J.).

A sentence *may* violate due process if it is based upon material "misinformation of constitutional magnitude."  *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citations omitted).  But Jones's sentence was not based upon material misinformation. The trial court based its departure on Jones's letters to his sister in which he asked her to find a witness to testify falsely on his behalf.  Jones never denied writing the letters nor did he disclaim their substance.  Therefore, Jones's sentence was not based on misinformation.

       2.    <u>Equal Protection</u>

To claim a violation of equal protection, Jones must allege that he was given a greater sentence because of racial bias or some other class-based, invidiously discriminatory animus. *United States v. Hodge*, 674 F. Supp. 585, 589 (N.D. Ohio 1987) (citing *Griffen v. Breckenridge*, 403 U.S. 88, 102 (1971)). Absent such a showing, the trial judge's actions are subject to rational basis review. *See United States v. Hughes*, 632 F.3d 956, 960 (6th Cir. 2011).

In his amended petition, Jones makes no claim that the trial judge acted out of discriminatory animus nor does this Court find any hint of such motive in the record. Accordingly, the sentencing departure is subject to rational basis review. The trial judge made clear that his reason for sentencing Jones above the guidelines was his attempt to suborn perjury. Because the trial court had a rational basis for its departure, Jones did not suffer any equal protection violation. Jones is not entitled to habeas relief on this claim.

B.   Substitute Counsel

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). The United States Supreme Court has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.* at 163-64, and against the demands of its calendar. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Moreover, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth

11

Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he [or she] prefers." *Wheat*, 486 U.S. at 159.

Because an indigent defendant has no absolute right to appointed counsel of choice, a criminal defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *See Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8). Those factors are balanced against the public's interest in the prompt and efficient administration of justice. *See Iles*, 906 F.2d at 1131, n.8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (same).

In addressing Jones's motion for relief from judgment, the trial court stated:

> The Court did not abuse its discretion when it denied Defendant's request for substitute counsel. A defendant's mere allegation that he lacks confidence in his attorney is not sufficient to constitute good cause to

12

substitute counsel.  At his *Ginther*[2] hearing that took place on November 6, 2006, November 13, 2006, and November 20, 2006, the Defendant stated his dissatisfaction with his trial attorney, Keith Turpel.  The Defendant stated that he believed there were numerous documents he was not given and that he was not given the results of a gunpowder residue test.  Judge Richard Lamb went through each item the Defendant requested.  Most of the items were items a defendant is not entitled to receive.  The Court instructed Attorney Turpel to allow the Defendant to review any material that he was not entitled to receive and to give the Defendant copies of everything that he was entitled to receive.  The issue regarding the gunpowder test was also examined.  The Defendant's hands were sprayed so that a gunpowder residue test could be performed, but the test had not been ordered.  Attorney Turpel indicated that he did not believe the test should be ordered for strategic reasons.  The Court asked Attorney Turpel:

> Well if the tests–If the tests were run and the results were achieved and the test results said your client had no indication that he had fired a weapon, wouldn't that be exculpatory?

Attorney Turpel responded, "Your Honor, that is not going to happen."  The Court was satisfied that there was a strategic reason for not ordering the test to be run.  The Court also found that there was no reason to remove Attorney Turpel from the case.

*Jones*, No. C06-1947 FC, at 5-6 (internal citation omitted).

The trial court adequately inquired into Jones's complaint and found that the conflict between Jones and his attorney did not prevent Jones from receiving an effective defense and that good cause did not exist for substitution. Accordingly, the trial court's denial of Jones's motion for substitute counsel did not violate Jones's Sixth Amendment right. Jones is not entitled to habeas relief on this claim.

C.     Ineffective Assistance of Appellate Counsel

Jones contends that his appellate counsel was ineffective for failing to raise meritorious issues on appeal.

---

[2]*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

13

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, Jones must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 688, 694). It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones" and therefore appellate advocates should be wary of the practice. *Id.* at 752 (quoting R. Stern, Appellate Practice in the United States 266 (1981)).

To evaluate a claim of ineffective assistance of appellate counsel, the Court assesses the strength of the claims appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citation omitted).

Jones has not established that his appellate counsel was ineffective. First, appellate

14

counsel was not ineffective for failing to raise Jones's due process claims related to his sentence because the claims lacked merit and are not likely to have changed the outcome on appeal.  As noted above, a petitioner has "no federal constitutional right, or absolute right under state law, to withdraw a plea." *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (Lawson, J.) (internal citations omitted).  Nor does Jones have a "federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (Gadola, J.)  And finally, Jones's sentence was not based on material misinformation.  Because there is not a reasonable probability that the due process claims would have succeeded on appeal, Jones's appellate counsel was not ineffective for failing to raise them.

Likewise, Jones's counsel was not ineffective for failing to raise the substitute counsel issue on appeal.  As noted above, the right to counsel of choice is not absolute and the appointment of new counsel is committed to the discretion of the trial court.  Though Jones expressed a lack of confidence in his trial counsel, there is no evidence that there was a lack of communication that precluded Jones from the benefit of a full defense.  The trial judge was therefore justified in denying Jones's request for substitute counsel, and any appeal of that decision is not reasonably likely to have succeeded.

Finally, Jones's appellate counsel was not ineffective for failing to argue that his sentence violated his right to equal protection.  No reasonable defense attorney would have raised the issue because Jones has no pointed to no basis on which he could have claimed discriminatory animus, and the trial court's sentencing decision plainly survives rational basis review.  Jones is not entitled to habeas relief on his ineffective assistance of counsel claim.

15

F.    Certificate of Appealability

The Court will decline to issue a certificate of appealability (COA) to Jones.

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003).

In this case, the Court concludes that reasonable jurists would not debate its rulings in denying the habeas petition, and thus, the Court will not issue a COA.

The standard for granting an application for leave to proceed *in forma pauperis* (IFP), however, is a lower standard than the standard for COAs.  *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (Rosen, J.) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir.1997)).  Although a COA may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith.  *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Because Jones's claims are not frivolous, he may proceed IFP on appeal..

**CONCLUSION**

16

**WHEREFORE** it is hereby **ORDERED** Jones's petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Jones a COA.

**IT IS FURTHER ORDERED** that Jones is **GRANTED** permission for an application for leave to appeal IFP.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 27, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 27, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager